# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN W. JEFFRIES,<br>      Plaintiff | )<br>)   C.A. No. 14-162 Erie<br>) |
| v | )<br>)   Magistrate Judge Baxter |
| WEXFORD HEALTH SOURCES,<br>INC., et al.,<br>      Defendants | )<br>)<br>)<br>) |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I. INTRODUCTION

### A. Relevant Procedural History

On June 9, 2014, Plaintiff John W. Jeffries, an adult individual formerly incarcerated at the State Correctional Institution at Mercer, Pennsylvania ("SCI-Mercer"), initiated this civil rights action by filing a complaint, pursuant to 42 U.S.C. § 1983, against the following named Defendants: Wexford Health Services, Inc., the health care service provider that was under contract with the Pennsylvania Department of Corrections ("DOC") to provide medical services to inmates at SCI-Mercer ("Wexford") at all times relevant to this case; Joseph Koch, DDS, a dentist employed by the DOC at SCI-Mercer ("Koch"); Scott Morgan, M.D., a former employee of Wexford who served as medical director at SCI-Mercer at all times relevant to this case ("Morgan"); Mark Baker, D.O., who served as the Strategic Clinical Initiatives Director of

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 10, 12, 13).

Wexford at all times relevant to this case ("Baker"); and Kimberly Boal, the Corrections Health Care Administrator at SCI-Mercer ("Boal"). For ease of reference, Defendants Koch and Boal will be collectively referred to as "Corrections Defendants," and Defendants Wexford, Morgan, and Baker will be collectively referred to as "Wexford Defendants."

In his complaint, Plaintiff claims that Defendants Morgan, Baker, and Boal were deliberately indifferent to his serious medical needs in violation of the eighth amendment to the United States Constitution, and that Defendants Wexford, Morgan, and Koch committed professional negligence under Pennsylvania state law. As relief for his claims, Plaintiff seeks monetary damages.

On August 18, 2014, the Corrections Defendants filed a (partial) motion to dismiss [ECF No. 20] seeking to dismiss Plaintiff's claims against Defendant Boal only. On September 9, 2014, Plaintiff filed a response to this motion voluntarily dismissing his claims against Defendant Boal only, pursuant to Fed.R.Civ.P. 41(a)(1)(A). As a result, the Corrections Defendants' motion [ECF No. 20] will be dismissed as moot and Defendant Boal will be terminated from this case.

On September 17, 2014, the Wexford Defendants filed a motion to dismiss [ECF No. 23], arguing that Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted against them.[2] Plaintiff has since filed a brief in response to this motion. [ECF No. 25]. This matter is now ripe for consideration.

---

[2] Although the Wexford Defendants' motion is styled as a motion to dismiss Plaintiff's claims in their entirety, the body of the motion, as well as the brief in support thereof, merely seeks dismissal of Plaintiff's Eighth Amendment deliberate indifference claim. Thus, said motion will be treated as a partial motion to dismiss, and the sufficiency of Plaintiff's state law professional negligence claim will not be considered.

**B.     Relevant Factual History**[3]

On March 6, 2013, while incarcerated at SCI-Mercer, Plaintiff had six upper teeth removed by Defendant Koch. (ECF No. 1, Complaint, at ¶ 11). The next day, Plaintiff complained of blood coming from his nose when he cleared his sinuses, and of blood coming from the site where his upper right second molar had been extracted. (Id. at ¶¶ 13-14). Defendant Koch examined Plaintiff and noted that Plaintiff suffered an oral-antral fistula, which is a hole formed between the mouth and the maxillary sinus in the cheekbone that was likely created by the tooth extraction. (Id. at ¶¶ 15-19). The fistula in Plaintiff's mouth was approximately ¼ inch in diameter, and allowed food and liquids to freely enter Plaintiff's sinus cavity any time he ate, drank, or brushed his teeth. (Id. at ¶ 20).

On May 16, 2013, Defendant Koch took final impressions for upper dentures that were to be placed in Plaintiff's mouth over the area of the fistula. (Id. at ¶ 29).[4] On May 20, 2013, Plaintiff reported waking with "a sudden and extremely painful throbbing toothache," and a nurse was summoned, who observed that a foreign substance had become lodged in Plaintiff's sinus. (Id. at ¶¶ 35-36). Later the same day, Plaintiff was seen by a dental hygienist, who observed "blue dental impression material lodged in an unhealed perforation into the sinus," but was unable to remove it. (Id. at ¶ 38). Plaintiff was then transported to Sharon Regional Medical Center

---

[3] The factual history recited herein is gleaned solely from the allegations of the Plaintiff's complaint, which are presumed to be true for purposes of determining the Wexford Defendants' motion to dismiss.

[4] Plaintiff makes a number of allegations regarding the continuing pain he experienced between March 7 and May 16, 2013, and the care he received from Defendant Koch and a non-defendant oral surgeon; however, all of said allegations are not relevant to the consideration of the Wexford Defendants' motion. Thus, they are omitted from the

("SRMC"), where a CT scan of Plaintiff's sinuses revealed that foreign material had passed through the oral-antral fistula and had become lodged in Plaintiff's sinus cavity; however, the material was lodged so tightly that emergency room personal were unable to remove it. (Id. at ¶¶ 41-42).

On May 23, 2013, Dr. Valeri Roth, an ear, nose, and throat specialist employed by SRMC, attempted to remove the foreign material without surgery, but was unsuccessful. Dr. Roth noted that the material was causing widespread infection in Plaintiff's sinus and recommended that the material be surgically removed, and the fistula closed surgically, as soon as possible. (Id. at ¶¶ 43). Dr. Roth's recommendation, stating "Must schedule consult no later than: ASAP per Dr. Roth," was reviewed and signed by Defendant Morgan on May 24, 2013. (Id. at ¶¶ 44). Six days later, on May 30, 2013, Defendant Baker approved funding for the surgery. (Id. at ¶ 45).

On June 4, 2013, Plaintiff was seen by Defendant Morgan and complained that his infection was worsening and he was emitting bloody pus from his nose. Defendant Morgan issued Plaintiff a "significant number of Motrin tablets" and tablets of Augmentin, but noted that removal of the foreign material from Plaintiff's sinus was likely the only remedy for his pain and infection. (Id. at ¶¶ 50-51). On June 12, 2013, a massive discharge of bloody pus erupted from Plaintiff's nose while he was attempting to eat lunch. After this eruption, the foreign material that had been previously sticking out of his tooth socket was no longer visible, as it had become dislodged and disappeared into a void left by the absence of bone and tissue that had allegedly

Court's factual recitation.

been destroyed by the infection. (Id. at ¶ 53). Plaintiff reported the episode to Drs. Koch and Morgan later the same day, but they simply told him to keep taking his antibiotics and returned him to his housing unit less than five minutes later. (Id. at ¶¶ 55-56). Plaintiff was ultimately transported to the hospital for surgery to remove the foreign material from his sinus cavity on July 5, 2013. (Id. at ¶ 60).

### C. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact

5

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

## II. DISCUSSION

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs.

6

Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[5] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

---

5

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, the Wexford Defendants have moved to dismiss Plaintiff's deliberate indifference claims against them, arguing that Plaintiff cannot show either that his medical need was "objectively sufficiently serious" or that Defendants Morgan and/or Baker acted with a "sufficiently culpable state of mind." First, as to whether Plaintiff's medical need was "sufficiently objectively serious," a surgical extraction of the foreign material from his sinus cavity was recommended by Dr. Roth on an emergency basis, and confirmed as such by Defendant Morgan. Moreover, the resultant infection was so obvious that a lay person would easily recognize the necessity for medical attention. Lanzaro, 834 F.2d at 347. Plaintiff's allegations are more than sufficient to meet the objective threshold of the deliberate indifference standard.

As for the subjective standard of deliberate indifference, Plaintiff has alleged that, as of May 24, 2013, Defendants Morgan and Baker both were aware of Dr. Roth's recommendation that Plaintiff receive surgery as soon as possible for the extraction of the foreign material from his sinus cavity. Yet, Plaintiff did not receive the surgery until July 5, 2013, 42 days later. Plaintiff alleges that this delay was due, in part, to Defendant Baker's delay in approving the funding for Plaintiff's surgery. While awaiting surgery, Plaintiff alleges that Defendant Morgan was aware that Plaintiff was experiencing persistent and significant pain, and that his sinus

infection worsened to the point where bloody pus erupted from his nose and facial bone and tissue were destroyed. In spite of this, Plaintiff alleges that Defendant Morgan simply issued pain medication and antibiotics, knowing that the same were ineffective, while acknowledging that the only effective relief for Plaintiff's pain was surgery. These allegations are sufficient to meet the subjective threshold of demonstrating a knowing disregard of an excessive risk to Plaintiff's health and safety, <u>Farmer</u>, 511 U.S. at 837, and/or "persistent conduct in the face of resultant pain and risk of permanent injury" <u>White</u>, 897 F.2d at 109.

Based on the foregoing, the Court finds that Plaintiff has met the threshold requirements for stating an Eighth Amendment claim of deliberate indifference to serious medical needs, and the Wexford Defendants' motion to dismiss will, therefore, be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN W. JEFFRIES,<br>      Plaintiff | C.A. No. 14-162 Erie |
| v | |
| WEXFORD HEALTH SOURCES,<br>INC., et al.,<br>      Defendants | Magistrate Judge Baxter |

## **ORDER**

AND NOW, this 30th day of March, 2015,

IT IS HEREBY ORDERED that the Wexford Defendants' motion to dismiss [ECF No. 23] is DENIED.

IT IS FURTHER ORDERED that, in light of Plaintiff's voluntary withdrawal of his claims against Defendant Boal [ECF No. 22], the Corrections Defendants' motion to dismiss [ECF No. 20] is DISMISSED AS MOOT, and Defendant Boal is terminated from this case.

                                                /s/ Susan Paradise Baxter
                                                SUSAN PARADISE BAXTER
                                                United States Magistrate Judge